UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ROBERT J. ARROM, et al.,

      Plaintiffs,

   v.

BOARD OF TRUSTEES OF THE PEPCO
HOLDINGS, INC., RETIREMENT
PLAN, et al.,

      Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 11-1965
(JEI/JS)

**OPINION**

**APPEARANCES:**

O'BRIEN, BELLAND & BUSHINSKY, LLC
By:  Stephen J. Bushinsky, Esq.
     Mark. E. Belland, Esq.
1526 Berlin Road
Cherry Hill, NJ 08003
   Counsel for Plaintiffs

LITTLER MENDELSON, P.C.
By: Jacqueline K. Hall, Esq.
One Newark Center, 8th Floor
Newark, NJ 07102
   Counsel for Defendants

**IRENAS**, Senior District Judge:

Plaintiffs initiated this action under the Employee
Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §
1001 et seq., to recover additional pension benefits they were
allegedly deprived of due to a failure to implement an updated
mortality table.[1]  Pending before the Court is Defendants' Motion

---

[1]  The Court exercises subject matter jurisdiction pursuant
to 29 U.S.C. § 1331 and § 1367.

1

to Dismiss the Complaint.

## I.

As employees of the Atlantic City Electric Company, Plaintiffs were eligible to receive retirement benefits under the Ace Sub-Plan ("the Plan") sponsored by Pepco Holdings, Inc., ("PHI").[2]  (Compl. ¶ 26.)

The Pension Protection Act of 2006 ("PPA"), 26 U.S.C. § 430, mandated two changes to all pension plans including the Plan effective January 1, 2008.  (*Id.* ¶ 31.)  First, the PPA required the application of an updated mortality table resulting in a higher base benefit amount for lump sum benefits.  26 U.S.C. § 430(h)(3); *see also* Compl. ¶¶ 31-32.  Second, the PPA added a corporate bond rate as an option for the interest rate assumption.  26 U.S.C. § 430(h)(2)(D); *see also* Compl. ¶¶ 31-32.  Plaintiffs were notified of these changes by electronic mail sent on November 19, 2007.[3]  (*Id.* ¶ 34.)

The Complaint alleges that in October 2009, union officials discovered that lump sum benefits after January 1, 2008 had been calculated using an outdated mortality table.  (*Id.* ¶ 40.)  According to the Complaint, PHI failed to notify the "Plan

---

[2]  Provisions generally applicable to the Plan are also contained in the Base Plan Document.  (Compl. ¶ 26.)

[3]  According to the Complaint, the use of electronic mail "was not a measure reasonably calculated to ensure actual receipt by Plaintiffs of these material modifications."  (Compl. ¶ 36.)

Administrator" of the updated mortality table and the "Plan Administrator" therefore had not implemented it.   The Complaint does not define the term "Plan Administrator."   Pursuant to ERISA, Administrator is defined as "the person specifically so designated by the terms of the instrument under which the plan is operated."   29 U.S.C. § 1002(16)(A)(i).   According to the Base Plan Document, the "Plan Administrator" means "the Company, acting through the Investment Committee and Administrative Board. . . ."   (Sullivan Dec. Ex. A at 14, 16.)   The Company is Defendant PHI. (*Id.* at i.)   Notwithstanding this definition, the parties use "Plan Administrator" to refer to Vanguard, PHI's third-party pension administrator, which is not a Defendant in this action and is not identified in any of the Plan documents submitted with the instant Motion.   In this Opinion, the Court will not use the term "Plan Administrator" to refer to Vanguard.

As a result of Vanguard's failure to implement the updated mortality table in 2008, Plan participants who elected to retire after January 1, 2008 received smaller lump sum benefits than they were entitled to under the Plan.  (*Id.* ¶ 43.)   Defendants retroactively recalculated the lump sum benefits and provided additional payments to all participants who retired after January 1, 2008.  (*Id.*)

Plaintiffs allege that they "elected to retire on or about December 2007 based on the projected calculations of the Plan

3

Administrator [Vanguard] that Plaintiffs' 2008 lump sum pension benefit would be less than the amount they would receive if they elected to retire in 2007."[4]  (*Id.* ¶ 48.)  The Complaint also alleges that "[w]hether or not Plaintiffs contacted the Plan Administrator [Vanguard] to ascertain their lump sum pension benefit, any such contact for this purpose would have been an exercise in futility since the Plan Administrator [Vanguard] would not have been able to provide accurate information." (Compl. ¶ 51.)  The essence of Plaintiffs' claims is that they would have elected to retire after the PPA-mandated changes took effect on January 1, 2008 had they been correctly advised that they would receive a significantly larger lump sum pension benefit at that time.  (*Id.* ¶ 50.)

After unsuccessfully pursuing administrative remedies under the Plan, Plaintiffs initiated the instant action in this Court on April 7, 2011.  On July 18, 2011, Defendants moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).[5]

---

[4]  According to the April 21, 2010 claim denial letter, Plaintiffs "requested pension estimates from Vanguard, either orally or through the Pension Estimator on Vanguard's website, for both December 2007 and February 2008." (Sullivan Dec. Ex. D.)  This fact is not included in the Complaint and it is not referenced by Plaintiffs in their Opposition papers.

[5]  Defendants also bring their motion pursuant to Fed. R. Civ. P. 12(b)(1) based on their argument that Plaintiffs lack standing to assert claims under 29 U.S.C. § 1132(a)(1)(B). District courts have exclusive jurisdiction over ERISA actions commenced by the Secretary of Labor, participants, beneficiaries or fiduciaries.  29 U.S.C. § 1132(e)(1).  Defendants presumably

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2).

While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions.  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible.  *Phillips*, 515 F.3d at 234.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

---

bring their motion pursuant to Fed. R. Civ. P. 12(b)(1) because the Third Circuit has held that "[t]he requirement that the plaintiff be a plan participant is both a standing and subject matter jurisdictional requirement." *Miller v. Rite Aid Corp.*, 334 F.3d 335, 340 (3d Cir. 2003).  However, because the Court finds that Plaintiffs has standing to assert their claims, and that this Court has subject matter jurisdiction to consider them, it will deny Defendants' Motion pursuant to Fed. R. Civ. P. 12(b)(1).

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

When evaluating a Rule 12(b)(6) motion to dismiss, the Court considers "only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of America*, 361 F.3d 217, 221 n.3 (3d Cir. 2004).  A document that forms the basis of a claim is one that is "integral to or explicitly relied upon in the complaint." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

## III.

In their Complaint, Plaintiffs advance several theories of recovery for the harm they allegedly suffered.  First, they assert claims for unpaid pension benefits due under the terms of the Plan.  (Compl. Counts 1, 6.)  Second, Plaintiffs assert breach of fiduciary duty claims based on (1) Defendants' failure to disclose information about the updated mortality table to Plaintiffs and to Vanguard, and (2) Vanguard's failure to provide correct information to Plaintiffs about the value of their benefits in 2007 as compared to 2008. (Compl. Counts 2, 3, 4.)  Finally, Plaintiffs assert state law claims for negligence and breach of the duty of good faith and fair dealing.

The Court will first consider each of these theories of liability.  Then, the Court will examine Plaintiffs' remaining claims for improper notice of claim denial and for unpaid vacation and holiday time under the Labor Management Relations Act, 29 U.S.C. § 185.

**A.**

In Counts One and Six, Plaintiffs seek the amount of unpaid benefits due to them under the terms of the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B), as well as equitable relief under § 1132(a)(3)(B).

Pursuant to 29 U.S.C. § 1132(a), a participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of *his* plan. . . ."  29 U.S.C. § 1132(a)(1)(B)(emphasis added).  However, Plaintiffs are not seeking benefits under the Plan in effect at the time of their retirement in December 2007.  Indeed, there is no dispute that Plaintiffs received all the benefits to which they were entitled under the Plan in effect in 2007.  (*See* Sullivan Dec. Ex. E at 5.)

Rather, the Complaint is clear that Plaintiffs' argument is that they would have chosen to retire in 2008 had they been properly advised that their lump sum benefits would be significantly larger.  Thus, Plaintiffs' claims are not for unpaid benefits under the Plan, but for breach of fiduciary duty.

7

Because Plaintiffs' claims are not for benefits due under the terms of the Plan in effect as of their retirement in 2007, they cannot assert a cause of action under 29 U.S.C. § 1132(a)(1)(B).[6]  *See Cigna Corp. v. Amara*, 131 S.Ct. 1866, 1877 (2011)(a court is only authorized by this provision to enforce the contract as written).  Accordingly, Defendants' Motion to Dismiss will be granted as to Counts One and Six.[7]

**B.**

A claim under ERISA for breach of a fiduciary duty requires proof that "(1) the defendant was acting in a fiduciary capacity; (2) the defendant made affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries; (3) the misrepresentation or inadequate disclosure was material; and (4) the plaintiff detrimentally relied on the misrepresentation or

---

[6]  While Defendants frame their argument for dismissal of this claim in terms of standing, the essence of their argument is that Plaintiffs cannot assert a colorable claim to benefits under this particular provision.  *See supra* note 5.

[7]  Defendants also argue that the claims pursuant to 29 U.S.C. § 1132(a) are time-barred because Plaintiffs failed to file suit in this Court within the Plan's contractual 90-day limitations period as set forth in the Summary Plan Description ("SPD").  (Defs' Br. at 10.)  However, the SPD submitted with Defendants' moving papers is not a summary of the Plan effective January 1, 2005.  It is a summary of a 1999 version of the Plan sponsored by Conectiv, effective prior to the date Potomac Electric Power Company and Conectiv merged and became subsidiaries of the holding company, PHI.  (*See* Sullivan Dec. Ex. A at i; Ex. G.)  Because the Plan does not include a 90-day limitations period and because the SPD is not a summary of the Plan at issue in this case, the Court concludes that any argument based on its provisions is inapplicable here.

inadequate disclosure." *Shook v. Avaya, Inc.*, 625 F.3d 69, 73 (3d Cir. 2010)(internal quotations and citation omitted).

### 1.

In Counts Two and Three of the Complaint, Plaintiffs assert breach of fiduciary duty claims for Defendants' failure to disclose information about the updated mortality table to Plaintiffs and to Vanguard.[8] Defendants move to dismiss these claims arguing that Defendants had no duty to affirmatively disclose information about the PPA-mandated changes to either Plaintiffs or Vanguard.

First, with respect to Defendants' alleged failure to notify Vanguard of the PPA-mandated changes, the Court finds no theory under which such a duty could be imposed. Vanguard was selected by PHI as a third-party administrator presumably pursuant to the Plan Administrator's right to delegate its responsibilities as

---

[8] According to Plaintiffs' Opposition Brief, "the gravamen of Counts Two and Three are that Defendants may be estopped from denying Plaintiffs the additional sums of pension benefits as a result of their failure to properly notice Plaintiffs and properly notice and implement the revised mortality tables with the third party Plan administrator." (Pls' Opp. at 24.) However, an estoppel theory of recovery, which "operates to place the person entitled to its benefit in the same position he would have been in had the representations been true," is inapplicable to the facts of this case. *Cigna Corp. v. Amara*, 131 S.Ct. 1866, 1880 (2011). Plaintiffs are plainly not seeking to hold Vanguard to its representations that lump sum pension benefits in 2008 were smaller than in 2007, but instead seek the higher benefits Vanguard did not tell them they would be entitled to if they retired in 2008.

set out in sections 4.4 and 4.5 of the Base Plan Document.[9]
There is no basis on which this Court could find that PHI acted
in a fiduciary capacity with respect to Vanguard, which is
plainly an agent delegated responsibilities by its principal,
PHI.  *See infra* note 11.

With respect to Defendants' alleged failure to notify
Plaintiffs, the Court begins with the rule that a "pension plan
may not be amended so as to provide for a significant reduction
in the rate of future benefit accrual unless the plan
administrator provides the [required] notice. . . ."  29 U.S.C. §
1054(h)(1); *see also* 26 U.S.C. § 4980F(e)(1).  In this case, the
PPA-mandated changes significantly increased the base amount of
Plaintiffs' lump sum pension benefits.  Therefore, no notice was
required for Plan changes made pursuant to the PPA.  *See also* 26
C.F.R. § 54.4980F-1 Q&A-8(d)("[N]o notice is required to be
provided" for a plan that is "amended to reflect the changes to
the applicable interest rate and applicable mortality table . . .
made by the Pension Protection Act of 2006. . . .").

Despite this, Defendants did send notice via email on

---

[9]  Section 4.4 provides: "Any powers and duties of the named
fiduciaries allocated above may be further delegated by a written
resolution of the Investment Committee or the Administrative
Board, as the case may be."  (Sullivan Dec. Ex. A at 19.)
Section 4.5 provides: "The Investment Committee or the
Administrative Board, or any person delegated duties by them may
employ such counsel, accountants or other specialists as it deems
necessary or desirable in connection with the administration of
the Plan."  (*Id.*)

November 19, 2007 to PHI employees advising them of the PPA-mandated changes.[10] (*See* Sullivan Dec. Ex. C.)  The email provides:

> The Pension Protection Act of 2006 (PPA) requires plan sponsors such as PHI to make certain amendments to its retirement plans. One of the required amendments affects participants who are eligible for a lump sum payout from their plan.  Specifically, the PPA requires the lump sum payment to be calculated using a new mortality table and an interest rate based on corporate bond rates.
>
> Although the Internal Revenue Service has not yet issued final guidance on this provision of the PPA, PHI recognizes that this is very important to many PHI employees who need the information to make necessary decisions about their future retirement plans.
>
> PHI will implement the new mortality table as required on January 1, 2008.  Further, PHI will implement the new corporate bond rate required by the PPA, but the corporate bond rate will only be a "floor," that is, lump sums will be calculated using the interest rates currently in the plans and also calculated using the corporate bond rate.  The employee will receive the higher lump sum benefit.
>
> In the event further changes are found to be warranted, PHI will, as always, provide as much advance notice as possible.

(*Id.*)  What this email does not include is the information that would be meaningful to Plaintiffs considering retirement in 2007, namely, that the new mortality table would result in a staggering

---

[10]  There is no dispute that Defendants acted in a fiduciary capacity with respect to Plaintiffs.

increase in value for plan participants electing lump sum pay

outs.  At oral argument, the change in value from the 2007 lump

sum calculated with the old mortality table to the 2008 lump sum

based on the new mortality table was estimated to be $1.8 million

for the sixteen Plaintiffs in this case.

The Third Circuit has "firmly establish[ed] that when a plan

administrator affirmatively misrepresents the terms of a plan or

fails to provide information when it knows that its failure to do

so might cause harm, the plan administrator has breached its

fiduciary duty to individual plan participants and

beneficiaries."  *In re Unisys Corp. Retiree Medical Benefit ERISA*

*Litig.*, 57 F.3d 1255, 1265 (3d Cir. 1995); *see also Bixler v.*

*Central Pa. Teamsters Health and Welfare Fund*, 12 F.3d 1292, 1300

(3d Cir. 1994)(a fiduciary's duty to inform "entails not only a

negative duty not to misinform, but also an affirmative duty to

inform when the trustee knows that silence might be harmful").

While Defendants were not required to disclose plan changes

pursuant to the PPA, they elected to provide notice to plan

participants and therefore had a fiduciary obligation "not to

misinform employees through material misrepresentations and

incomplete, inconsistent or contradictory disclosures."  *Id.* at

1264.  A reasonable fact-finder might conclude that Defendants'

email misled Plan participants by omitting material information

about the effect the updated mortality table would have on lump

sum pension benefits.  Without knowledge that the updated
mortality table would substantially increase lump sum pay outs,
Plaintiffs who were considering retirement elected to do so in
December 2007 to their detriment.  However, had the email
informed Plan participants that by working one additional month,
they would be entitled to over $100,000 dollars more in their
lump sum distribution, it would be implausible that any
participant would choose retirement in December 2007.

Based on the allegations in the Complaint, Plaintiffs have
stated a plausible claim that Defendants had an affirmative duty
to inform Plan participants who might be considering retirement
in 2007 that the updated mortality table would significantly
increase their lump sum pension benefits in 2008.  Therefore, at
this stage of the litigation, the Court finds that Plaintiffs
have stated a colorable breach of fiduciary duty claim based on
Defendants' incomplete and misleading email regarding the PPA-
mandated changes.

Accordingly, Defendants' Motion to Dismiss will be granted
as to Count Three and denied as to Count Two.

**2.**

Count Four of the Complaint alleges a breach of fiduciary
duty stemming from Vanguard's incorrect advice to Plaintiffs in
response to their inquiries regarding the value of their lump sum
benefits in 2007 as compared to 2008.  Defendants move to dismiss

13

Plaintiffs' breach of fiduciary duty claim in Count Four arguing
that Plaintiffs cannot establish a material misrepresentation or
detrimental reliance.[11]  (Defs' Br. at 14-16.)

---

[11]  The Court notes that the alleged misrepresentations were
made by Vanguard, which is not named as a Defendant in this
action.  In their Moving Brief, Defendants "reserve the right to
argue that, to the extent any misrepresentations were made by
Vanguard, they are not fiduciary representations that can be
attributable to them."  (Defs' Br. at 14 n.5.)
     There appears to be no dispute that Vanguard, as a third-
party plan administrator, and PHI, as Plan Administrator, both
acted as fiduciaries with respect to Plaintiffs.  A person is a
fiduciary with respect to an ERISA plan "to the extent (i) he
exercises any discretionary authority or discretional control
respecting management of such plan or exercises any authority or
control respecting management or disposition of its assets, . . .
or (iii) he has any discretionary authority or discretionary
responsibility in the administration of such plan."  29 U.S.C. §
1002(21)(A).
     Pursuant to 29 U.S.C. § 1105(a), "a fiduciary with respect
to a plan shall be liable for breach of fiduciary responsibility
of another fiduciary with respect to the same plan"
          (1) if he participates knowingly in, or
          knowingly undertakes to conceal, an act or
          omission or such other fiduciary, knowing such
          act or omission is a breach;
          (2) if, by his failure to comply with section
          1104(a)(1) of this title in the administration
          of his specific responsibilities which give
          rise to his status as a fiduciary, he has
          enabled such other fiduciary to commit a
          breach; or
          (3) if he has knowledge of a breach by such
          other fiduciary, unless he makes reasonable
          efforts under the circumstances to remedy the
          breach.
29 U.S.C. § 1105(a).
     It is also not clear that 29 U.S.C. § 1105(a)is the
exclusive basis for imposing liability on PHI for a breach of
fiduciary duty by Vanguard.  As Plan Administrator, PHI chose to
contract some of its duties to Vanguard pursuant to sections 4.4
and 4.5 of the Base Plan Document.  It is not clear that PHI can
escape its fiduciary duty to participants by electing to contract
with a third party to perform some of those duties.  This issue

In the Complaint, Plaintiffs allege:

> When eligible Plan participants sought to
> retire in 2008 they contacted the Plan
> Administrator [Vanguard] to ascertain the
> anticipated amount of Plaintiffs' lump sum
> pension benefit, the result received from the
> Plan Administrator [Vanguard] was incorrect
> because of the use of the outdated mortality
> table and an incorrect interest assumption. .
> . . . . Plaintiffs elected to retire on or
> about December 2007 based on the projected
> calculations of the Plan Administrator
> [Vanguard] that Plaintiffs' 2008 lump sum
> pension benefit would be less than the amount
> they would receive if they elected to retire
> in 2007.

(Compl. ¶¶ 42, 48.)  Viewed in the light most favorable to

Plaintiff, these allegations are sufficient to survive a motion

to dismiss.  Plaintiffs have alleged that they contacted Vanguard

to determine the value of their pension benefits in December 2007

as compared to January 2008 and elected retirement in December

2007 in reliance on the erroneous advice they received.

At this stage of the litigation, the Court finds that

Plaintiffs sufficiently alleged a material misrepresentation and

detrimental reliance, and have stated a plausible claim for

breach of fiduciary duty.  Accordingly, Defendants' Motion to

---

was not briefed by either party.  Indeed, neither party even
referred to 29 U.S.C. § 1105(a).  Nor do the parties refer to 29
U.S.C. § 1105(c), though at first blush the Court doubts that
this section applies to sections 4.4 and 4.5 of the Base Plan
Document.  At this stage of the litigation, the Court will assume
without deciding that PHI would be liable for the alleged breach
by Vanguard.

Dismiss Count Four will be denied.

### C.

Defendants move to dismiss Plaintiffs' state law claims for negligence and breach of good faith and fair dealing arguing that they are preempted by ERISA.

29 U.S.C. § 1144 provides that "the provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). ERISA's preemption provision is "deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-46 (1987). "As such, a cause of action asserted under state law is pre-empted if it can be said to 'relate to' an employee benefits plan." *Bicknell v. Lockheed Martin Grp. Benefits Plan*, 410 Fed. Appx. 570, 576 (3d Cir. 2011)(citing *Pilot Life Ins. Co.,* 481 U.S. at 47).

Here, Plaintiffs' state law claims are based on Defendants' failure to utilize the updated mortality table when calculating lump sum pension benefits under the Plan in effect as of January 1, 2008. These state law claims plainly relate to an ERISA-governed plan and therefore are preempted. Accordingly, Defendants' Motion to Dismiss the state law claims in Count Eight will be granted.

**D.**

In Count Five, Plaintiffs assert that the notice of claim denial they were sent following Defendants' denial of their claim for additional pension benefits did not include required information.[12]  Plaintiffs seek monetary sanctions against Defendants in the amount of $100/day pursuant to 29 U.S.C. § 1132(c)(1) for the improper notice of claim denial.[13]  (Compl. ¶ 67.)  In addition, Plaintiffs seek attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1), and the additional lump sum benefits they would have obtained if they retired in 2008.  (*Id.*)

29 U.S.C. § 1133 provides that "every employee benefit plan" must:

---

[12]  In their Opposition Brief, Plaintiffs appear to be making an additional claim that Defendants did not comply with their request for additional information necessary to supplement Plaintiffs' appeal.  (*See* Pls' Opp. at 30.)  Plaintiffs cite to 29 C.F.R. § 2560.503-1(h), which requires "every plan" to establish a procedure by which claimants can obtain a "full and fair review" of claim denials.  (*Id.* at 29-30.)  That procedure must include a provision "that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits."  29 C.F.R. § 2560.503-1(h)(2)(iii).  In a letter dated June 16, 2010 from Plaintiffs' attorney to PHI's Manager of Compensation & Benefits, Plaintiffs requested e-mails, document drafts, and internal correspondence regarding the review of Plaintiffs' claims and the decision to implement the updated mortality table.  However, no such claim is pled in the Complaint and the Court therefore will not consider it.

[13]  For violations occurring after July 29, 1997, the maximum amount of the monetary penalty was increased to $110 a day.  *See* 29 C.F.R. § 2575.502c-1.

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

29 C.F.R. § 2560.503-1(g) sets forth the required content of a notice of benefit determination by plan administrators. A plan administrator is to provide claimants with written notice that must include:

> (i) The specific reason or reasons for the adverse determination; (ii) Reference to the specific plan provisions on which the determination is based; (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review.

29 C.F.R. § 2560.503-1(g)(1)(i)-(iv).

Pursuant to 29 U.S.C. § 1132(c)(1), "[a]ny administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . may in the court's discretion be personally liable to such participant or

beneficiary in the amount of up to $100 a day."  29 U.S.C. §
1132(c)(1).

Defendants move to dismiss Count Five arguing that the Third
Circuit's decision in *Groves v. Modified Ret. Plan for Hourly
Paid Emps. of the Johns Manville Corp. & Subsidiaries*, 803 F.2d
109 (1986), forecloses Plaintiffs' claim for sanctions.  The
Court agrees.  The Third Circuit's decision in *Groves* makes clear
monetary sanctions may not be imposed on a plan administrator for
violations of 29 U.S.C. § 1133 because it "imposes duties
expressly and exclusively on the plan and not the plan
administrator."  803 F.2d at 116 (internal quotations omitted).
In addition, the Third Circuit held that personal liability
against a plan administrator as provided for in 29 U.S.C. §
1132(c)(1) may not be imposed for violations of 29 C.F.R. §
2560.503-1(g).[14]  *Id.* at 116, 118.  The Third Circuit reasoned
that penalties are authorized only for statutory violations and
not for agency regulations.  *Id.*

Moreover, Plaintiffs are not entitled to a substantive
remedy for the alleged failure to comply with the disclosure
obligations set forth in 29 U.S.C. § 1133 and 29 C.F.R. §

---

[14]  Plaintiffs cite this regulation in their Opposition
Brief, but make no reference to it in their Complaint.  Moreover,
the Complaint omits any facts that would indicate that this
provision is relevant.

2560.503-1(g)(1).  The appropriate remedy for such a violation is "remand to the plan administrator so that the claimant gets the benefit of a full and fair review."  *Syed v. Hercules Inc.*, 214 F.3d 155, 162 (3d Cir. 2000); *see also Parker v. BankAmerica Corp.*, 50 F3d 757, 768 (9th Cir. 1995)("a claimant who suffers because of a fiduciary's failure to comply with ERISA's procedural requirements is entitled to no substantive remedy.").  The Court will not dismiss Plaintiffs' claim for improper notice of claim denial and to the extent that Defendants are found to have violated 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1(g)(1), Plaintiffs may obtain remand to the Plan Administrator for a full and fair review.

Accordingly, Defendants' Motion is granted with respect to Plaintiffs' claims for sanctions and for additional lump sum benefits only.

**E.**

In Count Seven, Plaintiffs claim that "if they continued employment in 2008, they would be immediately eligible for up to six (6) weeks of paid vacation and five (5) paid floating holidays pursuant to the Collective Bargaining Agreement between Atlantic City Electric Company and Local 210 international Brotherhood of Electrical Workers."  (Compl. ¶ 70.)  According to Plaintiffs, with this Count they "seek to be made whole for benefits that they would have been eligible to receive if they

had elected to remain employed in 2008." (Pls' Opp. at 32.)

The Complaint seeks these damages pursuant to 29 U.S.C. § 185, the Labor-Management Relations Act. However, there are no allegations to support an inference that PHI breached the collective bargaining agreement or that Plaintiffs exhausted their administrative remedies by pursuing this claim through the procedures set forth in the collective bargaining agreement. Because the Complaint does not set forth sufficient allegations supporting a claim for damages pursuant to 29 U.S.C. § 185, Defendants' Motion to Dismiss Count Seven will be granted.

**IV.**

For the reasons stated above, Defendants' Motion to Dismiss will be granted as to Counts One, Three, Six, Seven, and Eight, and denied as to the fiduciary duty claim in Counts Two and Four. Defendants' Motion is also granted as to Plaintiffs' claims for sanctions and additional lump sum benefits in Count Five, but denied as to Plaintiffs' claim for improper notice of claim denial. An appropriate Order accompanies this Opinion.


Dated: September __30__, 2011


       __s/Joseph E. Irenas_____
       **JOSEPH E. IRENAS, S.U.S.D.J.**